**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **HOLLY SOUTHERLAND,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | **No. 7:10-cv-23** |
| | : | |
| **BASF SPARKS, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

_____

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 19).

For the reasons stated below, the Court grants the Motion.

I.    **Background**

Defendant BASF Sparks, LLC ("BASF") is a chemical company that

manufactures agricultural chemicals in Sparks, Georgia.  (Defendant's Statement

of Material Facts ("DSOMF") ¶ 1.[1]) Plaintiff Holly Southerland ("Plaintiff") was

hired by MicroFlo Corporation in June 2004, a company that was later acquired

by BASF. (DSOMF, ¶¶ 2, 5.) Plaintiff was initially hired as an Inventory Control

Specialist. (DSOMF, ¶ 6, Plaintiff Aff., ¶ 6.) Her job description encompassed

various accounting-related duties, including recordkeeping, inventory tracking,

data entry/analysis, and report generation, as well as other responsibilities that

she was assigned during her tenure at BASF. Id.

_____

[1] All citations to the Defendant's Statement of Material Facts refer to facts that
have been admitted by Plaintiff.

In February 2009, it was announced that the position of Site Controller, a senior management position, would soon be vacated by the then position holder, Mr. Carl Tyson ("Tyson"). The Site Controller job description included a variety of administrative and leadership duties, as well as other functional responsibilities such as inventory control, accounting, and cost analysis activities for the Sparks, Georgia site. (DSOMF, ¶¶ 10, 11, Plaintiff Aff., ¶¶ 10, 11.) Tyson was leaving his position at BASF Sparks to transfer to BASF's Corporate Accounting Platform in Freeport, Texas. (DSOMF, ¶ 12.)

Upon hearing news of Tyson's impending transfer, Plaintiff, along with two other BASF employees, voiced an interest in Site Controller position and submitted a resume to Mr. Ron Mathis, the Site Manager. (DSOMF, ¶ 13, Plaintiff Aff., ¶ 13.) Plaintiff and Mr. Steve Hooks ("Hooks") were identified as the primary contenders for the top management position within the Administrative Services Department. (Mathis Decl., ¶ 7.)

However, after Tyson stated his intent to transfer, Mathis had the idea to eliminate the Site Controller position in an attempt to reduce costs and overall headcount. (Mathis Decl., ¶ 7.) Under his plan, the responsibilities of the Site Controller would be divided and added to the job description of two other positions – the Accounting Supervisor, Plaintiff's then position (Mathis Depo., p. 17), and the Purchasing Planner, Hooks' then position (Mathis Depo., p. 35). This reorganization would effectively create two new positions where there were formerly three positions. These new positions would be later designated as the

Administrative Services Manager and the Administrative Services Supervisor. Id.
The role of Administrative Services Manager was created to absorb many of the
administrative and leadership tasks of the Site Controller position, while the
Administrative Services Supervisor position was created to carry out the
functional responsibilities of the Site Controller.

   To determine who should be placed in the two new positions, Mathis
conducted a side-by-side analysis of Plaintiff and Hooks. (Mathis Depo., p. 15.)
Based on his analysis, Mathis determined that Hooks was more qualified than
Plaintiff to assume the role of Administrative Services Manager. Id. At the time
Mathis was evaluating Plaintiff and Hooks, the reorganization of the management
positions had not yet been publicly announced. Plaintiff and Hooks had
previously submitted resumes under the assumption that they were applying for
Tyson's former position of Site Controller – the highest ranking position in the
Administrative Services Department. (Plaintiff Aff., ¶ 20, Hooks Depo., p. 26-28.)

   On February 25, 2009, a conference call took place between Mathis,
Tyson, BASF Operations Director John Donnelly, Business Group Controller
Stefan Schnell, and Director of Business Accounting Dave Myer. (Mathis Depo.,
p. 14-15.)[2] During that call, Mathis discussed his idea of consolidating the three

---

[2] In her affidavit, Plaintiff contends that "[t]his conversation did not take place as
described by Mathis. … Carl Tyson was not part of this conversation."
(Southerland Aff., ¶ 33.) However, Plaintiff makes no claim that she was a part of
this conversation and offers no independent evidence to support her contention
about what occurred during the call. Therefore, the Court finds it appropriate to
accept Mathis' account of the conversation, despite Plaintiff's objections.

current positions into two new positions, and he also recommended that Hooks be placed as the Administrative Services Manager and Plaintiff as the Administrative Services Supervisor. (Mathis Depo., p. 14.) According to Mathis, the conference call participants agreed with his recommendations about reorganization, but felt that since the new Administrative Services Supervisor would be reporting directly to Mr. Dave Myer ("Myer"), the Director of Business Accounting, Myer should have the opportunity to independently evaluate the candidates. (Mathis Depo., p 49-50, 52.)

Pursuant to this call, Myer visited the Sparks site on March 5, 2009, and met with Plaintiff, Hooks, and a third candidate, Paula Avery. (DSOMF, ¶ 39, Plaintiff Aff., ¶ 39.) After meeting with the candidates, Myer believed that Plaintiff was best suited for the Administrative Services Supervisor position. (Myer Depo., p. 20, 22.) Approximately a week later, Simmie McNeal, the Human Resources Manager, sent out an e-mail announcing that Hooks had been promoted to Administrative Services Manager and Plaintiff had been promoted to Administrative Services Supervisor. (Plaintiff Depo., p. 97-98, Ex. 12.) As a benefit of their new positions, both Plaintiff and Hooks received the same percentage increase in compensation. (Mathis Decl., ¶ 13.) According to Plaintiff, this amounted to a $3,200.00 raise for her and a $16,000.00 raise for Hooks. (Plaintiff Aff., ¶ 18.) Plaintiff also contends that Hooks received a management bonus in the amount of twenty percent of his salary. (Plaintiff Aff., ¶ 48.) Both Plaintiff and Hooks remain in their positions as Administrative Services

Supervisor and Administrative Services Manager, respectively. (Mathis Decl, ¶ 13.)

II.    **Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 354-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex

Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this framework, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   **Analysis**

Plaintiff has brought her claim for discrimination under Title VII. *See* 42 U.S.C. § 2000e *et seq.* Plaintiff claims that she "has been the victim of discrimination on the basis of her gender in that she was treated differently than similarly situated male employees." (Doc. 1, p.3.) Specifically, Plaintiff asserts that the decision to appoint Hooks as the Administrative Services Manager was motivated by gender discrimination.

Plaintiff maintains that she was more qualified than Hooks (Plaintiff Aff., ¶ 16), and that she was more capable of performing the additional job responsibilities that came along with the Administrative Services Manager position (Plaintiff Aff., ¶ 17). For example, Plaintiff states that she assisted Tyson, the former Site Controller, with many of his responsibilities including general

department management and supervisor responsibilities; advising management on accounting; financial and general business matters; production efficiency reporting; transfer process, annual contract tolling fees and other business-related issues; and special projects and initiatives as directed by the Site Manager and Business Group Controller. (Plaintiff Aff., ¶ 11.) Plaintiff further claims that she was "brought into multiple meetings to help [Tyson] provide information to the management of BASF Sparks and provided back up documents to him as requested so that he would be in a position to fulfill the Site Controller duties." (Plaintiff Aff., ¶ 11.)

In addition to claiming that she was the most qualified applicant, Plaintiff further contends that Mathis intentionally did not inform her about the structural changes to the management positions, and this lack of awareness left her at a disadvantage. She argues that if she knew the Administrative Services Manager position was available she "may have presented her qualifications differently." (Plaintiff Aff., ¶ 20.) She further claims that Hooks was aware of the structural changes at the time of his interview, which gave him an unfair advantage during the interview process. (Plaintiff Aff., ¶ 69-72.)

Discrimination claims based upon the failure to promote can be established through either direct or circumstantial evidence. *See* Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). A claim based on direct evidence requires "the most blatant remarks, whose intent could mean nothing other than to discriminate." Id. (citing Rojas v. Florida, 28 F.3d 1339, 1342 n. 2

(11th Cir. 2002)). Any evidence that merely suggests discrimination, but does not conclusively establish it, is considered circumstantial evidence. Id. In this case, Plaintiff argues that circumstantial evidence establishes her claim of gender discrimination in the failure to promote context.

A.    **Discrimination Claims in the Failure to Promote Context**

A three-step analysis is employed to evaluate failure to promote discrimination claims based on circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25 (1973). The plaintiff must first demonstrate the four elements necessary to establish a prima facie case: "(1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was not promoted; and (4) someone outside her protected class was promoted." Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998).[3]

---

[3] There is an intracircuit split in the Eleventh Circuit as to whether the fourth element of the prima facie case for a failure to promote claim requires the plaintiff to demonstrate that the employee who received the promotion was equally or less qualified than the plaintiff.

The requirement of showing that the employee was equally or less qualified was first recognized in Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 n.7 (11th Cir. 1983). Prior to Perryman, Eleventh Circuit courts relied on Crawford v. Western Elec. Co., 614 F.2d 1300, 1315 (5th Cir. 1980), which only required that plaintiffs demonstrate that someone outside the protected class was promoted. The Eleventh Circuit exhaustively discussed the split in Walker v. Mortham and adopted the Crawford rule under the "earliest case" principle, noting that "we have found no explanation for why the Perryman court decided to alter the prima facie case." 158 F.3d 1177, 1186, 1187 (11th Cir. 1998).

Despite the Walker Court's instruction, courts within the Eleventh Circuit have continued to apply both Perryman and Crawford. Nevertheless, this Court

Next, if the plaintiff is able to establish these four elements, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. The employer is not charged with persuading the court that it was actually motivated by the stated reasons. Id. (citing Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981)). Instead, if the employer "articulat[es] one or more reasons, then the presumption of discrimination is rebutted." Id. (citing Wilson, 376 F.3d at 1087).

Finally, if the defendant offers a non-discriminatory reason justifying the employment action, the burden of production shifts to the plaintiff to produce sufficient evidence to permit a factfinder to determine that the reasons offered by the employer are mere pretext. Chapman v. A.I. Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). The plaintiff can do so by either "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). If the plaintiff does not offer sufficient evidence to create a genuine issue of material fact about whether the employer's stated reasons are pretextual, then the employer is entitled to summary judgment on the plaintiff's claim. Chapman, 229 F.3d at 1025.

---

finds, based on Walker's reasoning, that Crawford is the appropriate precedent, and the standard articulated in that case controls here.

In this case, Plaintiff can establish a prima facie case for discrimination for failure to promote; however, Plaintiff fails to show that the reasons stated by BASF for the promotion are pretext. The three steps of the failure to promote framework as articulated in McDonnell Douglas Corp., 411 U.S. at 802-04, are analyzed below.

1.   **Plaintiff's prima facie case**

The plaintiff in a failure to promote action bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802.  The first element of the prima facie case is that a plaintiff must show that she is a member of a protected class. Walker, 158 F.3d at 1186. In this case, Plaintiff is female, which is considered a protected class. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 351, 113 S.Ct. 753, 801 (1993). Thus, the first element of the prima facie case is satisfied.

Next, a plaintiff must demonstrate that she applied and was qualified for the promotion. Walker, 158 F.3d at 1186. To demonstrate that she applied, a plaintiff must show that she actually submitted an application in compliance with formal application procedures. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005). If informal procedures are used for the application process, "a plaintiff must only demonstrate that the employer had some reason to know of his interest in the position." Id. To show that she was qualified, a plaintiff at the prima facie stage only needs to show that she met the employer's objective criteria. Id. at 769.

10

In this case, BASF was using an informal application process. Plaintiff voiced her interest in the Site Controller position (DSOMF, ¶ 13, Plaintiff Aff., ¶ 13), and although she did not explicitly mention the Administrative Services Manager position, the Court finds that her interest in the Site Controller position should be interpreted to apply to the Administrative Services Manager position as well. The creation of the Administrative Services Manager position was not yet public knowledge, and thus Plaintiff could not have known about the job to mention it specifically. Plaintiff's notification of her interest in the Site Controller position is sufficient to demonstrate that she applied for a promotion in the Department. Further, she was identified by management as a top contender for the position. The serious consideration given to Plaintiff for the position of Administrative Services Manager demonstrates that she was objectively qualified for the managerial position. Thus, Plaintiff satisfies the second element of the prima facie case.

Third, Plaintiff must show that she was not promoted. Walker, 158 F.3d at 1186. This element is arguably satisfied because Plaintiff currently holds the Administrative Services Supervisor position, a role that reports to the Administrative Services Manager and the Site Manager. (Plaintiff Aff., ¶ 45, Myer Depo., p. 16, Mathis Depo., p. 32-33.) This demonstrates that she did not receive the promotion she desired in the Administrative Services Department, and therefore, Plaintiff has a valid argument that satisfies the third element of the prima facie case.

Finally, a plaintiff bringing a failure to promote claim must establish that someone else outside the protected class was promoted. Walker, 158 F.3d at 1186. This element is also satisfied because Hooks, who received the top managerial position, is male.

BASF argues that the fourth element is not satisfied in this case because the Site Controller position was eliminated, and therefore, no one received the promotion to this position. However, the Court declines to interpret Plaintiff's complaint so narrowly as to preclude her claim on the basis of a job title. Instead, the Court interprets Plaintiff's claim to assert that gender discrimination affected the decision of who to promote to the highest-ranking managerial position within the Administrative Services Department. Whether that job title is Site Controller or Administrative Services Manager, Plaintiff's claim is the same – that she should have received the promotion to the highest position in the Department. The Court declines to adopt BASF's reasoning and finds that Plaintiff has established the fourth element.

Therefore, all elements of the prima facie case have been met.

2. **BASF's legitimate reasons for its employment decision**

If a plaintiff bringing a failure to promote claim can establish a prima facie case for discrimination, then the burden of production shifts to the defendant to articulate a legitimate reason for its employment decision. McDonnell Douglas Corp., 411 U.S. at 802-03. Here, BASF has articulated three reasons to justify its

decision to promote Hooks over Plaintiff.[4] First, BASF alleges that Plaintiff was less qualified than Hooks for the promotion. According to BASF, Hooks had more experience with leadership and management, which uniquely qualified him for the Administrative Services Manager position. Plaintiff, on the other hand, was more qualified to take on the accounting responsibilities as Administrative Services Supervisor. Second, BASF asserts that Plaintiff had issues with her job performance that affected her ability to manage a department. In contrast, Hooks had no reports of conduct that would hinder his ability to perform as an effective manager. Finally, BASF contends that it was undergoing significant financial stress that warranted a reduction in head count and justified reorganization.

The Court finds that these reasons are sufficient to discharge BASF's burden of proof at this stage, and Plaintiff's claim of discrimination is rebutted.

### 3.   **Plaintiff's arguments that BASF's reasons are pretext**

If the defendant in a failure to promote case articulates legitimate reasons for its allegedly discriminatory action, the burden shifts back to the plaintiff to demonstrate that the reasons stated by the defendant are pretext. McDonnell Douglas Corp., 411 U.S. at 804. In this case, Plaintiff has established a prima facie case of discriminatory failure to promote, but summary judgment in favor of BASF is still appropriate because Plaintiff has failed to raise a genuine issue of material fact as to whether BASF's reasons for not promoting Plaintiff are pretext.

---

[4] These three reasons are discussed in greater detail below as part of the Court's discussion of the third prong of the McDonnell Douglas Corp. framework, which analyzes whether BASF's stated reasons are pretext.

In the failure to promote context, pretext can be established by revealing "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendant's] proffered legitimate reasons for its action." Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007). However, a plaintiff cannot prove pretext "by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." Id. (citing Alexander v. Fulton Co., 207 F.3d 1303, 1339 (11th Cir. 2000)). A plaintiff must go further than merely claiming that the defendant's reasons for promoting someone else were wrong; instead, the plaintiff must show the defendant's actions were actually motivated by discriminatory intent. Id.

Comparing qualifications will be sufficient to establish pretext only when "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." Ash v. Tyson Foods, Inc., 546 U.S. 454, 456, 126 S.Ct. 1195 (2006) (quoting Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004) (overruled on other grounds)). "[A]sserting baldly that she was better qualified than the person who received the position at issue" will not be adequate. Wilson, 376 F.3d at 1090. Essentially, to show that a reason asserted was pretextual, the disparity between applicants must be so great that no reasonable person would have chosen the candidate that was selected over the plaintiff. Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).

In this case, BASF has articulated several non-discriminatory reasons to support its decision to restructure and offer Plaintiff the position as Administrative

14

Services Supervisor, and Plaintiff is unable to rebut these reasons. The reasons stated by BASF for promoting Hooks over Plaintiff include: 1) Plaintiff was less qualified than Hooks, 2) Plaintiff had issues with her job performance, and 3) BASF was undergoing significant financial stress that warranted a reduction in head count. These reasons are discussed below.

### i.   **Plaintiff was less qualified than Hooks**

As to the Administrative Services Manager position, Plaintiff contends that she was "unquestionably, the most qualified applicant." (Doc. 31, p. 3.) However, the general consensus of those people with first-hand knowledge of Plaintiff's abilities recognized that she was qualified to take over the accounting aspect of the Site Controller position, but was not prepared to assume the leadership and management aspects of the job. For example, Tyson, the former Site Controller, recognized that "I had spent a lot of time helping [Plaintiff] with the accounting and finance function of my role and I can say that [Plaintiff] was prepared to take the accounting role." (Tyson Depo., p. 17.) He further noted that "[Plaintiff] got the account position and that was what I trained her and what I had shown her how to do during her tenure there." (Tyson Depo., p. 25.) In both of these statements, Tyson specifically addressed the accounting functions only.

Myer, the Director of Business Accounting, commented "I talked to Mr. Hooks about the accounting activities and what it entailed. And he had interest in it, but with his background mainly in the logistical area, I felt that [Plaintiff] was more qualified for the accounting duties." (Myer Depo., p. 28.) Additionally, he

recognized that "[i]t was felt that she was not ready to take on all those additional
business activities" (Myer Depo., p. 19-20), and "I would suspect that at her
experience level there were things that she was not ready to handle [with the
Administrative Services Manager position]" (Myer Depo., p. 20).

Mathis, who ultimately made the hiring decision, conducted a side-by-side
analysis of Plaintiff and Hooks, and noted that

> [w]hile both candidates met the basic qualifications for the position, I
> observed that Hooks had been with the Company longer, had a
> more diversified work background, and had supervisory experience
> both before and during his time with BASF. I also noted that Hooks
> already had his Master's in Business Administration, whereas
> Plaintiff had not yet received this degree. Furthermore, I knew that
> Plaintiff had only performed in one position and had no supervisory
> experience during her shorter tenure with the Company.

(Mathis Dec., ¶ 9.)

Plaintiff argues the side-by-side analysis was unfair because Mathis
favored Hooks from the beginning. She claims that he created a list of subjective
criteria to determine who was most qualified for the newly-created Administrative
Services Manager, and this list was skewed in favor of Hooks. (Doc. 31, p. 5.)
However, Plaintiff's argument has no merit. The use of subjective hiring criteria
cannot prove pretext. "Absent evidence that subjective hiring criteria were used
as a mask for discrimination, the fact that an employer based a hiring or
promotion decision on purely subjective criteria will rarely, if ever, prove pretext."
Springer, 509 F.3d at 1349 (citing Denney v. City of Albany, 247 F.3d 1172, 1186
(11th Cir. 2001)). Therefore, even if Mathis did use subjective hiring criteria to

determine who should fill the role of Administrative Services Manager, the use of these criteria is insufficient to demonstrate pretext.

Plaintiff also claims that she was snubbed during the interview process because she never interviewed specifically for the Administrative Services Manager position and, in fact, was "never told the position even existed." (Doc. 31, p. 4.) However, there is no legal requirement for official job postings during the hiring process. Failure to post a job listing is insufficient evidence of pretext where "a supervisor has first-hand knowledge of the potential applicants and makes an employment decision based on that knowledge." Springer, 509 F.3d at 1350. Pre-selection of a candidate can be justified if it is based on the decision-maker's knowledge of the applicants' experiences and qualifications in relation to the job description. Id. Here, Mathis had previously worked with Plaintiff and Hooks, and therefore an official job posting was not a requisite part of the decision making process.

Additionally, Plaintiff argues that Hooks' promotion to Administrative Services Manager was inappropriate because of the Sarbanes-Oxley Act ("the Act"). The Act was created "to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 745 (2002). Plaintiff's contention is that Hooks' promotion to Administrative Services Manager was in error because the hiring decision potentially violates the Act. Without delving too deeply into the regulatory provisions of the Act, the Act prohibits

purchasers from directly supervising employees who work in accounting because of the possibility of fraud.  Plaintiff argues that as head of the Administrative Services Department, Hooks, a purchasing agent, now directly supervises Plaintiff, the accounting manager, and this potential Act violation could have been avoided if she was promoted over Hooks. (Mathis Depo., p. 50-51, Myer Depo., p. 15-16.)

After reviewing the record, the Court finds for purposes of this case that BASF has taken the necessary precautions to ensure that Hooks and BASF are protected against potential federal security violations. Myer noted in his deposition that Hooks "has no access to input any documents into the system. He can view documents and everything, but he cannot input any accounting documents. That's controlled by transactional authority." (Myer Depo., p. 16.) The current organizational framework has apparently been designed to avoid potential problems, and it has no bearing on the propriety of a promotion in the context of a discrimination case.

In sum, there is enough evidence in the record to conclude that BASF properly weighed the qualifications between Plaintiff and Hooks. The disparities are not so glaring as to "jump off the page and slap you in the face," Ash, 546 U.S. at 456, and therefore, there is no indication of pretext in BASF's selection of Hooks for the Administrative Services Manager.  If the reason stated by the defendant is one that might motivate a reasonable employer, then the court will not "sit in judgment of the wisdom of an employer's selection." Cooper, 390 F.3d

at 732. BASF's stated reason that Hooks was more qualified than Plaintiff for the promotion is a reasonable conclusion and does not show discrimination.

ii.    **Issues with Plaintiff's job performance**

In his analysis of Hooks and Plaintiff, Mathis noted that he was "aware that various individuals had reported performance-related issues regarding Plaintiff." (Mathis Dec., ¶ 10.) Mathis stated that the incidents reported by other employees included "exhibiting an inability to maintain confidential information or remain calm under pressure, displaying a lack of professionalism towards co-workers and supervisors, and repeatedly refusing to follow her supervisor's instructions to delegate work." (Mathis Dec., ¶ 10.) Additionally, from his own experience, Mathis stated that Plaintiff "shows her stress, [is] very moody, and very short with people" (Mathis Depo., p. 71) and that she needed to improve on "working under stress, being able to delegate assignments off her desk" (Mathis Depo., p. 82).

Plaintiff disagrees with Mathis' assessment. She contends that "she gets along with everyone" and that she "did not have any incidents with co-workers." (Plaintiff Aff., ¶ 30.) She further states that she had "never been informed of nor reprimanded for any performance-related issues or confidentiality issues." (Plaintiff Aff., ¶ 28.) Plaintiff offers the deposition of Jim Delprete as evidence that there she had no issues with other BASF employees. (Delprete Depo., p. 5.)

While there are no specific incidents mentioned in any of her performance reports, her 2008 report does reveal a note in the interpersonal relationships category that states "Holly gets along well with others throughout the different

levels of the organization. Need to work on staying calm under pressure, handling stress better outwardly." (Tyson Depo., p. 48, Ex. 17.) This report was prepared by Tyson, the former Site Controller.

In contrast, Hooks' record contains no evidence of problems with handling stress or staying calm. However, he had "previously been advised by BASF that he needed to work on his communication skills." (Mathis Dec., ¶ 11.) To improve his communication skills, Hooks requested to be sent to a Dale Carnegie course. (Hooks Depo., p. 34, Mathis Decl. ¶ 11.) He stated that his father attended a Dale Carnegie course and told him that the course helped him "be a better thinker, better speaker." (Hooks Depo., p. 37.) Hooks requested that BASF enroll him in the course so that he could be "become a better speaker in front of people." Id. BASF approved his request to attend the course, noting that "this course is established, enjoys a national reputation and might just help Steve develop more of an outgoing personality." (Mathis Depo., p. 217, Plaintiff's Ex. 26.)

Unlike Plaintiff's portrayal of the Dale Carnegie course, this course is not a remedial course for employees who are experiencing problems with co-workers. Instead, it is a professional tool used to maximize growth in the workplace. Perhaps as a result of this class, by the time the Administrative Services Manager position became available, the concern with his communication skills had been alleviated and he was considered a good managerial candidate. (Mathis Depo., p. 81, 98.)

The record reflects that Plaintiff struggled with more interpersonal issues than Hooks. There is evidence that Plaintiff's co-workers reported her for exhibiting inappropriate or difficult behavior; however, there is no indication that BASF employees reported Hooks for any reason. Additionally, despite Plaintiff's assertion that Hooks was "referred for training through Dale Carnegie for his interpersonal skills" (Doc. 31, p. 3.), the record reflects that Hooks requested to be sent to Dale Carnegie to improve his communication skills.

In sum, Plaintiff's difficulties with handling stress and building positive relationships with her co-workers could lead a reasonable employer to choose Hooks over Plaintiff for a managerial position. Even a rumored lack of professionalism could justify an employer making the decision not to promote a certain employee to a position in management. Thus, Plaintiff cannot carry the burden of demonstrating that this reason was pretext.

### iii.   **Significant financial stress on BASF**

Plaintiff acknowledges that the decision to divide the duties of the former Site Controller position because of financial stress is, on its face, a legitimate reason for the reorganization of the Administrative Services Department. (Doc. 31, p. 8.) However, Plaintiff argues that there is no evidence in the record that BASF was actually suffering from financial stress in 2009. Yet, Plaintiff's own testimony acknowledges that at the time of the restructuring, BASF was going through reductions in force as "cost saving initiatives." (Plaintiff Depo., p. 95.) Additionally, Myer, the Director of Business Accounting, noted that "part of the

21

desire here was to be able to have the duties that Carl Tyson had done [while] not adding a person back to the site and being able to take a head count reduction." (Myer Depo., p. 24.) Further, Mathis, the Site Manager, recognized that "[d]ue to the ongoing economic recession, BASF has challenged each of its business units to search for ways to reduce costs in an effort to maintain profitability. … [O]ne of my principal responsibilities has been to identify opportunities to cut costs at the Sparks facility, which would include, but is not limited to, making personnel changes." (Mathis Dec., ¶ 4.)

There is enough evidence on the record to conclude that the restructuring efforts made by BASF, including the termination of the Site Controller position, were legitimate cost-saving measures. Financial stress of a company is a valid justification for reducing head count, and Plaintiff cannot show that this proffered reason is pretext for discrimination.

B.     **Punitive Damage Claim**

Plaintiff has failed to establish any genuine issue of material fact as to her Title VII failure to promote claim. Since Plaintiff is unable to demonstrate that she is entitled to relief on this claim, the Court finds that her claim for punitive damages is also without merit. Therefore, the Court grants summary judgment in favor of BASF on Plaintiff's claim for punitive damages.

IV.   **Conclusion**

In conclusion, the Court finds that Plaintiff can establish a prima facie case for discrimination, but is unable to demonstrate that the reasons stated by BASF

for the hiring decision were pretext. Therefore, summary judgment is appropriate in favor of the BASF.

       **SO ORDERED, this 25th day of October, 2011.**


                    ***s/ Hugh Lawson***
                    HUGH LAWSON, SENIOR JUDGE


ebr